UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:25-cv-10772-WGY

KELECHI LINARDON,

      Plaintiff

      v.

EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES, KATE WALSH,
Individually and in Her Official Capacity,
MONTACHUSETT REGIONAL TRANSIT
AUTHORITY; JERRY MCDONALD,
Individually and in His Official Capacity;
DOES 1 through X, inclusive, and ROE
Business Entities I through X inclusive,

      Defendants

DEFENDANTS', MONTACHUSETT
REGIONAL TRANSIT AUTHORITY
and JERRY MCDONALD, OPPOSITION
TO PLAINTIFF'S MOTION FOR
PREMINARY INJUNCTION[1]

## I.    INTRODUCTION

Defendants, Montachusett Regional Transit Authority ("MART"), and Jerry McDonald

(collectively "Defendants") hereby oppose Plaintiff Kelchi Linardon's ("Plaintiff" or

"Linardon") Motion for Preliminary Injunction (the "Motion").

---

[1] Plaintiff has not served her Complaint or Motion for Preliminary Injunction on Defendants, Montachusett Regional Transit Authority and Jerry McDonald. A review of the Summons Returned that purportedly was served on Montachusett Regional Transit Authority that is filed with the Court and that appears on the docket, indicates that the Summons and Complaint were served "in hand to Donald Brooker, agent and person in charge . . . at c/o Attorney General 1 Ashburton Place Boston, MA 02018." [Dkt. 9]. The Attorney General however, is not an agent authorized to accept service on behalf of MART. MART is a transit authority established pursuant to G.L. c. 161B. Section 2 of Chapter 161B provides that "[p]rocess may be served upon the administrator of an authority or his designee," and specifically states that "[s]ection three of chapter twelve shall not apply to the authorities established under this chapter." G.L. c. 161B, § 2. G.L. c. 12, § 3 provides that the attorney general shall appear for the commonwealth and for state departments, officers and commissions in all suits and other civil proceedings in which the commonwealth is a party. G. L. c. 12, § 3. Accordingly, the delivery of the Summons and Complaint care of the Attorney General's office is not proper service on MART or Mr. McDonald. Defendants do not waive their defense of insufficient service of process by filing their opposition to Plaintiff's Motion for Preliminary Injunction.

MART is a regional transportation authority established pursuant to G.L. c. 161B. MART provides public transportation services to 22 cities and towns in north central Massachusetts. Through its Dial-A-Mart service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips. MART also provides transportation through its operating company for the Commonwealth's Human Service Transportation Division ("HST") of the Executive Office of Health (and Human Services ("EOHHS"). MART provides many routes for the Department of Developmental Services as well as individual MassHealth client rides on an as needed basis. In her Complaint, Plaintiff who is a member of MassHealth, alleges that the Defendants have discriminated against her and harassed her because of her disability, race and gender "while [she is] being transported to her medical appointments" (Complaint, ¶ 4) and alleges that Mr. McDonald, who is the Assistant Director of Member Services for MART, has "intentionally, recklessly, and negligently deprived Plaintiff of timely, safe, and nondiscriminatory transportation in violation of her federal rights" (Complaint, ¶ 5). Specifically, Plaintiff alleges that Defendants violated her rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 3601-3619, Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1213 et seq. and related human rights statutes including 42 U.S.C., § 1983.[2] In her Complaint Plaintiff brings the following Counts against Defendants: 1) Negligence, Intentional Discrimination, and Violation of the ADA and Title VI (Count I), 2) Negligence (Violation of Civil Rights Under

---

[2] While Plaintiff references 42 U.S.C. § 1983 in her introductory paragraph and in her request for relief, she does not include a Count alleging a violation of 42 U.S.C., § 1983 in her Complaint nor are the factual allegations contained in her Complaint sufficient to state a claim against either MART or Mr. McDonald for the violation of 42 U.S.C. § 1983. Even if Plaintiff's Complaint did state a claim for the violation of 42 U.S.C., § 1983 against Mr. McDonald, which it does not, Mr. McDonald would be entitled to qualified immunity because he would in no way have known that his actions in trying to assist Plaintiff to source transportation services for her violated Plaintiff's civil rights.

Title VI and the ADA) (Count II), and 3) Negligence and Intentional Infliction of Emotional Distress (Count III).

Plaintiff's Motion or Preliminary Injunction must be denied because Plaintiff is not likely to prevail on the merits of her claims. All of Plaintiff's claims are premised on her assertion that Defendants have failed to accommodate her as a member of MassHealth in the provision of transportation services. However, what will be made clear below is that Defendants have gone above and beyond what is required by the MassHealth Transportation program to accommodate Plaintiff even agreeing to some of her requests that are not related to her disability, which are not prescribed by her MassHealth providers and which are not reasonable. MART has had difficulty sourcing Transportation Providers willing and able to transport Plaintiff not only because of her request that the vendor's drivers disassemble and lift her power mobility device, but also due to Plaintiff's own bad behaviors. Because of the difficulty in sourcing vendors willing and able to transport Plaintiff to and from her appointments with MassHealth providers, Defendants have offered Plaintiff reasonable transportation options including: 1) suggesting she have an escort or personal care assistant travel with her to tend to her power mobility device, 2) offering to have a vendor transport her in a lift equipped chair car to safely lift and secure her power mobility device, and 3) offering her personal reimbursement for using Uber/Lyft ride sharing services for transportation to her medical appointments. The fact that Defendants have not been willing or able to accede to all of Plaintiff's demands, does not mean that Defendants have failed to reasonably accommodate Ms. Linardon when sourcing her transportation to and from her MassHealth medical appointments.

As will be set forth in more detail below, because Plaintiff is not likely to succeed on the merits of her claims and will not be irreparably harmed if her request for an injunction is not granted, Plaintiff's Motion for a Preliminary Injunction must be denied.

## II.   RELEVANT FACTS

MART is a regional transportation authority established pursuant to G.L. c. 161B. MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts.  Through its Dial-A-Mart Service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips.  MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS").  MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis. The Commonwealth has established a statewide Human Services Transportation coordination initiative, which utilizes a Broker system of managing transportation services for eligible consumers from various programs and agencies ("HST Brokerage System").  Selected Regional Transit Authorities such as MART act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers ("Vendors").  **Exhibit 1 – Affidavit of Jerry McDonald, ¶¶ 2-4**.

To be eligible for transportation, a Mass Health member's provider must complete an online Prescription for Transportation request (PT-1 form). If the PT-1 form is approved, the MassHealth member will receive a letter from the transportation broker (in this case MART) with instructions on how to schedule a ride.  The transportation is curb-to-curb service unless an enhanced level of service is indicated on the approved PT-1 form. This means that the member

will be picked up at the curb at her location of origin and dropped off at the curb at her destination. The driver may help the member board and exit the vehicle, but if the member requires additional assistance, the member must ensure that someone is there who can assist. The member may also choose to bring someone with her to the appointment. If an escort is needed, there is a space on the PT-1 form for the MassHealth provider to note that and the escort must be approved on the PT-1. **Exhibit 1, ¶ 6**. If a member uses a wheelchair, walker, or mobility scooter, the member may still use the PT-1 service. If the member uses a wheelchair, walker, or requires additional assistance, the medical provider must include the information as part of the member's PT-1. **Exhibit 1, ¶ 7**. Once the member receives notification that the PT-1 has been approved, the Transportation Broker – in this case MART, will arrange rides for the member. If the member is approved for transportation for the first time, MART sends the member a welcome letter with MART's contact information, as well as information on scheduling, filing complaints and other helpful resources. MART assigns each trip to a Transportation Provider on a low-cost, most appropriate basis, and on vehicle accessibility. **Exhibit 1, ¶¶ 8, 9.** HST policies do not allow participants to choose their own vendors. Drivers transporting MassHealth members are not allowed to make any unscheduled stops. Drivers cannot leave before a scheduled pick-up time even if they arrive early. They are required to wait until at least 10 minutes after scheduled pick-up time before departing without the member. MART has a call center to assist MassHealth members in scheduling their transportation. **Exhibit 1, ¶¶ 10-11**.

Ms. Linardon is a MassHealth member who has utilized MassHealth Transportation services. MART has been the Transportation Broker managing the transportation requests that should be but have not always been contained in PT-1 forms completed by Ms. Linardon's MassHealth providers. **Complaint, ¶ Factual Allegations, a**; **Exhibit 1, ¶¶ 4, 11 and 14**. Ms.

Linardon has a motorized mobility device (motorized scooter). She insists that the Transportation Provider's driver first remove the seat and fold the motorized mobility device, then manually lift it into the back of the vehicle. This is not a service that is provided under the MassHealth PT-1 transportation program. **Exhibit 1, ¶** 12. Ms. Linardon has also demanded that MART provide her with specific make, models and years of vehicles, and that that she be allowed to sit in the front seat of the vehicle. **Exhibit 1, ¶¶ 12, 13.** Mr. McDonald has communicated with the Plaintiff about her transportation to MassHealth medical appointments, about her demands that the driver transporting her remove the seat, fold and manually lift her powered mobility device into the back of the vehicle, about her complaints about the drivers and in turn vendors complaints about her behaviors and their refusal to transport her, and about options available to Ms. Linardon for transport given the difficulty MART has had in sourcing a vendor to transport her. **Exhibit 1, ¶¶ 11 and 12**. Ms. Linardon's PT-1s specify that she be transported in an SUV and that she has a foldable wheelchair, not a power mobility device (motorized scooter). On one occasion, Ms. Linardon agreed to be transported in a Sienna minivan when MART was having difficulty matching her with the exact vehicle she was requesting. MART's scheduling team has reached out to countless vendors who could potentially accommodate Ms. Linardon's requirements in terms of a suitable vehicle. However, as soon as they are told of her request that the power mobility device be partially disassembled, folded then lifted into the trunk, they immediately refuse to accept the booking. As a possible solution, Mr. McDonald has recommended to Ms. Linardon that a chair car (a wheelchair accessible vehicle) be sent to provide her transport to and from her medical appointments which would still allow her to sit in the front seat of the vehicle which she insists on doing, but Ms. Linardon has adamantly refused that option. **Exhibit 1, ¶ 12**. As recently as February 3, 2025,

MART has proposed three options to accommodate Ms. Linardon's transportation requests that include transporting her motorized mobility device which are as follows: 1) that an escort or PCA (personal care assistant) travel with her to tend to her power mobility device, 2) that a lift equipped chair car be sent to safely lift and secure her power mobility device (which would still allow her the option of being seated in the front seat, which she demands), and 3) personal reimbursement for using Uber/lift ride sharing services. **Exhibit 1, ¶ 12.** Ms. Linardon has rejected all three options.

In requesting transportation, Ms. Linardon has demanded that certain types of vehicles, including specific makes, models and years be provided even though her PT-1s that are completed and submitted by her MassHealth providers have no such requirements. For example, on the occasion that Ms. Linardon agreed to be transported in a Toyota Sienna, she insisted that the Sienna sent to transport her be a specific year and model. **Exhibit 1, ¶ 13** . To be eligible for transportation, a MassHealth Member's provider must complete and submit a PT-1 form. In the past when Mr. McDonald has informed Plaintiff that her PT-1 forms have expired and in order to book transportation she would need to have her provider submit a new one, Plaintiff has refused to do so and has insisted that it is up to MART or MassHealth to contact her provider. **Exhibit 1, ¶ 14.** As an example of the lengths that MART and vendors have gone to accommodate Ms. Linardon's request that are not included in her PT-1 forms and that go above and beyond the requirements of transportation services provided under the MassHealth PT-1 transportation program, Mr. McDonald found a new vendor to provide transportation for Ms. Linardon. Ms. Linardon requested a large SUV. When Mr. McDonald told Ms. Linardon that the vendor was sending a Chevy Tahoe, Ms. Linardon said she could not climb into the vehicle. Mr. McDonald reached back out to the vendor who was twenty minutes away from picking Ms. Linardon up to see if he had

another vehicle. The vendor had the driver turn around and then sent an CRV to pick up Ms. Linardon for her appointment. When the driver arrived in the CRV, Ms. Linardon refused to go saying she was too late for the appointment. **Exhibit 1, ¶ 15.**

Vendors are allowed to place Members on their exclusion list, a list of Members they will not transport. A number of vendors have placed Ms. Linardon on their exclusion list. Their complaints are similar. Vendors have complained that their drivers are often left waiting twenty to thirty minutes beyond Ms. Linardon's pickup times, and that Ms. Linardon expects that the drivers will be immediately available or around, should her appointment end prior to her scheduled return time. Ms. Linardon has been told more than once that the driver will arrive at the requested times and if her appointment ends earlier, she will need to wait. In addition to her tardiness, vendors have complained about Ms. Linardon's rudeness. Further, when vendors have gone to pick-up Ms. Linardon, she is not always at the location listed in the PT-1. The prescription for transportation contained in the PT-1 form completed by the MassHealth provider has specific pick up and drop off locations. The drivers are not allowed to pick up or drop off the member anywhere in between. **Exhibit 1, ¶ 16.** As an example of Ms. Linardon's rude behavior, Mr. McDonald learned that on April 15, 2023, a driver called Ms. Linardon to alert her that he had arrived at the address provided and he would be waiting for her. Ms. Linardon rudely told him that she was supposed to be notified 15 minutes ahead of time, which is not a requirement. The driver politely responded that he would be patiently waiting. When the driver called her almost 19 minutes later to find out if she was ready, Ms. Linardon screamed at him and told him not to call her again, that she would be outside when she was ready. Eighteen minutes later Ms. Linardon came out visibly agitated. When the driver asked her if she needed assistance getting into the car, she abused the driver and said she did not want to be rushed and that she would not get into the car until she spoke

with the owner of the company. When the driver told her that he was the co-owner and he would be happy to address her concerns, Ms. Linardon responded that she had never seen such a stupid owner. **Exhibit 1, ¶** 17.

Ms. Linardon has submitted complaints about vendors and their drivers. MART has investigated all of her complaints. **Exhibit 1, ¶** 18. Ms. Linardon has also complained about the location of the fire extinguisher in vehicles. The HST contract standards requires that vehicles have a fire extinguisher mounted at a specific location in the front of the vehicle. Ms. Linardon insists on sitting in the front seat when being transported. When Ms. Linardon complained about the location of the fire extinguisher, she was told that it was required to be in its location. Even after the driver offered to cover the fire extinguisher she continued to complain. **Exhibit 1, ¶ 19**. Despite the significant efforts and time spent addressing Ms. Linardon's needs, Ms. Linardon's behavior and demands have escalated to an unacceptable level. She is rude, disrespectful and her inappropriate conduct crosses the line leading many vendors to place her on their exclusion list. Her behaviors coupled with her demands that are outside HST and MassHealth PT-1 requirements, make it difficult for MART to connect her with a Vendor able to meet her requirements and willing to transport her. **Exhibit 1, ¶ 20**. Despite this MART has not excluded Ms. Linardon from being transported to MassHealth appointments pursuant to her PT-1s. Since February 2025, when MART has not always been able to source a vendor willing to accommodate Ms. Linardon's requests, MART has offered Ms. Linardon three (3) reasonable alternatives for transportation to her medical appointments that include, 1) her bringing an escort or PCA with her to tend to her power mobility device; 2) use of a lift equipped chair car (wheelchair equipped vehicle) to safely lift and secure her power mobility device which would still allow her the option of being seated

in the front seat; and, 3) personal reimbursement for using Uber/Lyft ride sharing services.  **Exhibit 1, ¶¶ 12, 21**

Between July 1, 2023 and May 2, 2025, Ms. Linardon has confirmed 161 trips, cancelled 115 trips once scheduled, canceled 3 trips upon the driver's arrival and was a no-show for 7 trips for a total of 286 trips.  **Exhibit 1, ¶  22.**

## III.   LEGAL ARGUMENT

### A.  Preliminary Injunction Standard

In her Motion for Preliminary Injunction, Ms. Linardon seeks to have the Court enjoin Defendants from denying or delaying transportation services to individuals with disabilities, continuing discriminatory and retaliatory practices, and failing to provide immediate, medically necessary transportation accommodations as set forth in Ms. Linardon's complaint.  See, Plaintiff's Motion for Preliminary Injunction Relief Hearing Pending Jury Litigation, Prayer for Relief.  In addition, Ms. Linardon seeks to have this Court order Defendants  to provide "prompt and adequate transportation services including those necessary for loading and unloading wheelchairs as medically prescribed."  Id.

In evaluating a motion for preliminary injunction the Court applies the familiar four-factor analysis: (1) the likelihood of the movant's success on the merits;  (2) the potential for irreparable harm to the movant if the injunction is denied; (3) a balancing of the relevant impositions, *i.e.,* the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect on the public interest of a grant or denial of the injunction.  Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  As set forth above and in more detail below, Plaintiff's Motion for Preliminary Injunction should be denied because Plaintiff is not likely to prevail on the merits of her claims

and will not be irreparably harmed if an injunction is not entered. Defendants have within the parameters of the MassHealth Transportation program, not excluded Ms. Linardon from being transported to and from her MassHealth appointments through the MassHealth Transportation program, but instead have sourced transportation for her and when not possible to connect her with a vendor who is able and willing to meet her demands, has provided Ms. Linardon with other options for transport to her appointments. Accordingly, Plaintiff's Motion must be denied, and her Complaint dismissed.

**B.  Plaintiff's Complaint Fails to State a Claim For the Violation of  Title VI**

In Count I and II of her Complaint, Ms. Linardon brings claims against the Defendants for the violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Plaintiff's Complaint has not and cannot state a claim for the violation of Title VI against either MART or Mr. McDonald in his individual capacity.[3] Title VI prohibits recipients of federal funds from intentionally discriminating based on race, color, or national origin in covered programs and activities.  Kestenbaum v. President and Fellows of Harvard Coll., 743 F.Supp.3d 297, 308 (2024), citing Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  MART does not receive federal funds for its work as an HST Broker arranging transportation by subcontracting with qualified Transportation Providers, to provide non-emergency medical transportation for MassHealth members who need assistance in getting to and from their health care appointments.  **Exhibit 1, ¶ 4**.  Because MART does not receive federal funds for the program of which Plaintiff complains, she cannot prevail on her claims for the violation of Title VI contained in Counts I and II of her Complaint and her request for an injunction must be denied and her Complaint dismissed.

---

[3] Plaintiff also names Mr. McDonald as a defendant in his official capacity, Naming Mr. McDonald in his official capacity in all but name is the same as naming MART.

Even if federal funds were involved, Plaintiff still is not likely to prevail on her Title VI claims because other than alleging that she has "experienced severe and repeated abuse, incidents of discrimination including harassment based on disabilities, race and gender," (Complaint, Factual Allegations ¶ d) Plaintiff's Complaint is totally devoid of any factual allegations in regards to her race and how her race – which she does not disclose, played a factor in any way in her complaints about Defendants' provision of transportation. Instead, as will be set forth below, all of Plaintiff's complaints arise from her belief that Defendants have not adequately accommodated her and have deprived her of transportation because of her disability. Even if MART was a recipient of federal funding for the work performed for HST, Plaintiff is still not likely to prevail on the merits of her claims because her Complaint fails to state a claim for the violation of Title VI. Accordingly, Plaintiff's Motion must be denied and her claims for the violation of Title VI contained in Counts I and II of her Complaint must be dismissed.

Finally, to the extent that Plaintiff brings a claim for the violation of Title VI against Mr. McDonald in his individual capacity that claim too fails because individuals cannot be held liable under Title VI. Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 230 (D. Mass. 2015); see also Whitfield v. Notre Dame Middle Sch., 412 Fed. Appx. 517, 521 (3d Cir. 2011) ("Individual liability may not be asserted under Title VI."); Shotz v. City of Plantation, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question…that individuals are not liable under Title VI.").

**C.** **Plaintiff Is Not Likely to Succeed on the Merits of Her Claim Brought Pursuant to the American With Disabilities Act**

In Counts I and II of her Complaint, Ms. Linardon also alleges that the Defendants violated the ADA "by providing inferior, delayed, and, on many occasions, no transportation services," (Complaint, ¶¶ 15 and 17) and she seeks an order from the Court requiring Defendants to "immediately provide her with transportation services, including the loading and

unloading of her personal wheelchair into the patient medical necessity restrictions prescribe type of vehicles (medically prescribe large Sedan and large SUV with front seat siting)." Complaint, ¶ 36.a.i. Ms. Linardon is not likely to prevail on her ADA claim, not only because her Complaint does not contain factual allegations to state a claim under the statute, but also because the actual facts belie Ms. Linardon's allegations that she has been excluded from being transported to her medical appointments. Not only has MART sourced transportation for Ms. Linardon on numerous occasions (approximately 286 times since 2023), but the facts make clear that Defendants have gone above and beyond what is required to accommodate Ms. Linardon's requests when possible, and by providing her alternate options for transporting to and from her MassHealth medical appointments with her power mobility device when not able to do so. Ms. Linardon fails to accept, that the services provided by MART as an HST Broker, are limited to the terms and conditions of the program, that include connecting Ms. Linardon with vendors who are willing and able to transport her to Mass Health appointments and when not possible, providing her with alternate transportation options. The parameters of the service provided only include curb to curb service and do not require that drivers disassemble and lift heavy power mobility devices into their vehicles. Likewise, drivers are only allowed to pick-up members at the locations contained in their PT-1 forms at their scheduled times. The service is not a personal taxi service. Ms. Linardon has limited the pool of vendors MART has available to transport her because of her own bad behaviors. Regardless, Defendants have not excluded Ms. Linardon, but have instead accommodated her Ms. Linardon by providing her options so that she can be transported to her medical appointments.

        To state a claim under Title II of the ADA, Ms. Linardon must show (1) that she is a qualified individual with a disability; (2) that she was either excluded from participation in or

denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000), citing 42 U.S.C. § 12132.  Regardless of whether Ms. Linardon is a qualified individual with a disability, she cannot prevail on her ADA claim because she was not excluded from participation in or denied the benefit of transportation services provided through MassHealth's Transportation program.  Other than making the general accusation that Defendants have denied and or delayed her transportation, her claim is devoid of any specific factual allegations to support her claim. Perhaps that is because Ms. Linardon has not been excluded from the program as is evident from the number of rides that Defendants have sourced for Ms. Linardon to provide her transportation to her MassHealth appointments.  **Exhibit 1, ¶ 22**.  Because Ms. Linardon clearly was not excluded from being provided transportation services through the MassHealth Transportation program, Ms. Linardon is not likely to prevail on the merits of her ADA claim and her motion for preliminary injunction should be denied and her Complaint dismissed.

What Ms. Linardon appears to be alleging is that Defendants would not accommodate her by providing drivers who would disassemble her power mobility device, fold it and lift it into the back of the vehicle and would not provide her with the specific vehicles, including specific make, models and years requested.  Ms. Linardon's MassHealth providers who completed her PT-1 forms had no such requirements.  Regardless, Ms. Linardon's requests were not reasonable because Defendants could not source vendors willing or able to not only accommodate Ms. Linardon's request in regards to her power mobility device, but also due to her tardiness and rude behavior towards their drivers.  Defendants then engaged in an interactive process with Ms. Linardon that provided her with alternative accommodations that would allow her to participate

in the program and be transported at scheduled times and at specific pick up locations to and from her MassHealth appointments.

Federal regulations implementing Title II require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7)(i). A request for a reasonable accommodation may trigger a responsibility on the part of the Defendant to enter into an interactive process with the Plaintiff to determine an appropriate accommodation. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 23 (1st Cir. 2004) citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 262 n.11 (1st Cir. 2001). Here, assuming arguendo that Ms. Linardon's requests that the drivers disassemble and lift her heavy, motorized mobility device into a vehicle that is a specific make, model and years of vehicles can be considered to be accommodation requests, Defendants did engage in the interactive process, first by trying to source transportation consistent with her requested accommodation and then, when not always possible and when it was becoming more difficult to do so posing an undue burden on Defendants, Defendants proposed what are reasonable alternative accommodations to transport Ms. Linardon to where she needed to be, that included but were not limited to, providing a lift equipped chair car to transport her, or to reimburse her for use of Uber or Lyft or other ride sharing service. **Exhibit 1, ¶** 12. Such accommodations are reasonable and Ms. Linardon cannot prevail simply because Defendants did not provide the accommodations she requested. A reasonable accommodation under the ADA need not be perfect or the one most strongly preferred by Plaintiff. Bush v. Acton-Boxborough Reg'l Sch. Dist., 2023 WL 3605440, at *4 (D. Mass. May 23, 2023); see also Wright v. New York State Dep't of Corrs., 831 F.3d 64,

72 (2d Cir. 2016).  Because Ms. Linardon cannot show that she was not provided a reasonable accommodation to afford her access to transportation services provided by the MassHealth Transportation program, she is not likely to prevail on her ADA claim against Defendants and accordingly, her Motion must be denied and her Complaint dismissed.

Finally, to the extent that Ms. Linardon brings her claim for the violation of the ADA against Mr. McDonald in his individual capacity, her claim must be dismissed because an individual sued in his individual capacity is not liable under Title II.  Weisman v. Hill, 629 F. Supp. 2d 106, 112 (D. Mass. 2009); see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the ADA does not provide for "individual capacity suits against state officials); Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official acting in his individual capacity.").

### D.  **Plaintiff Is Not Likely to Succeed on Her Claims for the Negligent and Intentional Infliction of Emotional Distress**

Finally, Ms. Linardon brings claims for "negligence" in Counts I and II of her Complaint and brings claims for the negligent infliction of emotional distress and the intentional infliction of emotional distress in Count III of her Complaint. Ms. Linardon's negligence claims must be dismissed because Plaintiff failed to present her claim to MART, an administrative prerequisite prior to filing her Complaint in Court.  See, G.L. c. 258, § 4.  To the extent that Ms. Linardon intended to bring her negligence claims against Mr. McDonald in his individual capacity, those claims must too be dismissed, because public employees are not liable for negligent acts pursuant to G.L. c. 258, § 2.

In addition, assuming *arguendo* that Ms. Linardon's claim is not barred G.L. c. 258, § 4 for her failure to make proper presentment, her claim for the negligent infliction of emotional

distress must still be dismissed because the provisions of the Massachusetts Tort Claims Act, G.L. c. 258 ("MTCA") do not apply to discretionary functions, such as those that form the basis of Ms. Linardon's negligence claim. Put another way, MART is immune from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." G.L. c. 258, § 10 (b). Indeed, Ms. Linardon's claim that MART negligently inflicted emotional distress on her is barred by G.L. c. 258, § 10(b) because, whether and how Defendants responded to Ms. Linardon's demands when sourcing her transportation to and from her MassHealth medical appointments, particularly to the extent that the requests were not contained in the PT-1 forms completed by her providers are discretionary functions of a public employee. In fact, MART's decisions in these regards were not limited by any statute or regulation and thus involves policy-making and planning for which § 10(b) was designed to immunize. Harry Stoller & Co. v. City of Lowell, 412 Mass. 139, 141 (1992).[4]

Even if Ms. Linardon's negligence claims are not barred, she is still not likely to prevail on her claim for the negligent infliction of emotional distress. To do so, Ms. Linardon must prove, 1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances. Lanier v. President and Fellows of Harvard Coll., 490 Mass. 37 (2022). The factual allegations contained in Ms. Linardon's Complaint, let alone the facts as set forth in Mr. McDonald's Affidavit attached hereto as Exhibit 1, do not support Ms. Linardon's claim. First, Defendants did not breach any duty owed to the Ms. Linardon. To the contrary, Defendants went above and beyond what was required to source Ms. Linardon

---

[4] Additionally, Plaintiff's NIED claim is no different from her claims made under Title VI and the ADA and it necessarily presupposes that she can prevail on those claims against MART.

transportation services to her MassHealth appointments. In addition, Ms. Linardon's has not pled facts to support her claim that she in fact suffered emotional distress that was caused by Defendant's conduct and has not pled adequate facts to show that the purported emotional distress caused physical harm manifested by objective symptomology. Certainly, no reasonable person would suffer emotional distress under the circumstances where Defendants connected Ms. Linardon with vendors to provide transportation to her MassHealth medical appointments, accommodated her requests when able no matter how unreasonable and when they could not, provided her options so that she could be transported to her appointments. If anything, the facts pled support that it is Ms. Linardon who has caused distress amongst MART employees and drivers who have all simply tried to assist her in providing her transportation to her MassHealth appointments. Accordingly, Ms. Linardon is not likely to prevail on her claim for the negligent infliction of emotional distress and her Motion must be denied and her Complaint dismissed.

Similarly, Ms. Linardon is not likely to prevail on her claim for the intentional infliction of emotional distress. As an initial matter, MART is immune from Ms. Linardon's claim for the intentional infliction for emotional distress under the MTCA. See, G.L. c. 258, § 10(c). While not immune, Ms. Linardon will not be able to prevail on her claim for the intentional infliction of emotional distress against Mr. McDonald. To prevail on her claim for the intentional infliction of emotional distress against Mr. McDonald, Ms. Linardon must establish, 1) that Mr. McDonald intended to cause, or should have known that his conduct would cause emotional distress; 2) that Mr. McDonald's conduct was extreme and outrageous; 3) that it caused the Ms. Linardon's distress; and, 4) that Ms. Linardon suffered severe emotional distress. Howcroft v. Peabody, 51 Mass. App. Ct. 573, 596 (2001). "To be considered extreme and outrageous, the defendant's conduct must be 'beyond all bounds of decency and … utterly intolerable in a civilized society.'"

<u>Vittands</u> v. <u>Sudduth</u>, 49 Mass. App. Ct. 401, 410 (2000) quoting, <u>Sena</u> v. <u>Commonwealth</u>, 417 Mass. 250, 264 (1994).  Mr. McDonald's conduct in his interactions with Ms. Linardon and his attempt to source transportation for her cannot remotely be construed to be extreme and outrageous and beyond the bounds of decency, to the contrary.  Mr. McDonald attempted to assist Ms. Linardon to find vendors who would provide her transportation despite her rude behavior and despite her demands.  When he could not do so, he provided her other options that would transport her without cost to her to her MassHealth medical appointments.  Ms. Linardon has not and will not be able to show that Mr. McDonald's conduct was in any way was outrageous which alone dooms her claim against him.  Even if it did not, Ms. Linardon's complaint lacks any factual support for her claim that Mr. McDonald's so-called extreme and outrageous conduct caused her extreme emotional distress.  Accordingly, Ms. Linardon is not likely to prevail on her claim for the intentional infliction of emotional distress and her Motion must be denied and her Complaint dismissed.

    **E.  <u>Plaintiff Will Not Be Irreparably Harmed If Her Request for a Preliminary Injunction is Denied</u>**

       Finally, Ms. Linardon will not be irreparably harmed if her request for a preliminary injunction is not granted. In her Motion, Ms. Linardon seeks to have this Court enjoin in part Defendants from allegedly "denying or delaying transportation services" to her, and to order that Defendants provide "prompt" and "adequate transportation service, including those necessary for loading and unloading wheelchairs as medically prescribed."  As set forth above, Defendants demands, particularly her demand that the driver partially disassemble and lift her heavy powered mobility device, is not within the parameters of the MassHealth Transportation program.  Despite that, Defendants have attempted to source vendors who are able to provide such service, which requires a driver who has the ability to lift the heavy device in the back of

the vehicle. Putting aside her bad behaviors that have led vendors to put Ms. Linardon on their exclusion list, Defendants have offered Ms. Linardon options for transportation including but not limited to providing a lift equipped chair car to transport her. Ms. Linardon will not be irreparably harmed if the Court does not order Defendants to meet her transportation demands – which may not be possible given the limited vendors and drivers Defendants can source to transport her, because she has been offered alternate means of transportation.

Because MRT has offered Ms. Linardon alternative means of transportation Ms. Linardon will not be irreparably harmed if her motion for preliminary injunction is not granted.

## IV.    <u>CONCLUSION</u>

For all of the reasons set forth above, Defendants respectfully request that this honorable Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

DEFENDANTS,
MONTACHUSETT REGIONAL TRANSIT
AUTHORITY and JERRY MCDONALD,

By their attorneys,

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
Adam G. Gutbezahl (BBO# 693275)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com
agutbezahl@k-plaw.com

Dated:  May 7, 2025

975796v2/37800/0001

<u>CERTIFICATE OF SERVICE</u>

I, Deborah I. Ecker, hereby certify that I have caused a copy of the foregoing document to be served electronically on all parties who are registered participants of the Court's ECF system, and that I will serve by mail those parties who are non-registered participants, upon notification by the Court of those individuals who will not be served electronically.

Dated: May 7, 2025

Deborah I. Ecker, Esq.