# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KELECHI LINARDON

        Plaintiff,

    v.

EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES; KATE WALSH,
Individually and in Her Official Capacity;
MONTACHUSETT REGIONAL TRANSIT
AUTHORITY; JERRY MCDONALD,
Individually and in His Official Capacity;
DOES l through X, inclusive, and ROE
Business Entities I through X inclusive,

        Defendants.

1:25-cv-10772-WGY

## DEFENDANT EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

   I.   Factual Background. ................................................................................................ 2

       A.   MassHealth Transportation Services and the EHS-MART Contract ..................... 2

       B.   Plaintiff's Particular Demands for Services Beyond Standard PT-1
           Transportation. ................................................................................................... 3

   II.   Procedural Posture. ................................................................................................ 4

ARGUMENT ....................................................................................................................... 5

   I.   Plaintiff Has No Likelihood of Success on the Merits of any of Her Claims..................... 6

       A.   Plaintiff Cannot Succeed on the Merits of Her Tort Claims Because These
           Claims are Barred as a Matter of Law and Fail as a Matter of Fact. ..................... 6

           1.   Plaintiff's Tort Claims Against EHS are Barred by the Eleventh
               Amendment. ............................................................................................. 7

           2.   Plaintiff's Claim for Intentional Infliction of Emotional Distress
               Cannot Proceed Against EHS Under the MTCA. ....................................... 8

           3.   Plaintiff Cannot Succeed on Her Claim for Negligent Infliction of
               Emotional Distress Because She Cannot Satisfy the Elements of that
               Cause of Action. ...................................................................................... 9

       B.   Plaintiff Cannot Succeed on the Merits of Any Claims Under 42 U.S.C.
           Section 1983, Because Such Claims are Barred as a Matter of Law. ................... 10

       C.   Plaintiff Cannot Succeed on the Merits of Her Claims Under Title II of
           the ADA Because She Was Never Discriminated Against, and Was Never
           Denied Transportation Services. ........................................................................ 11

       D.   Plaintiff Cannot Succeed on the Merits of Her Claims Under Title VI
           Because EHS Never Intentionally Discriminated Against Her. ........................... 13

       E.   Plaintiff Cannot Succeed on Any Retaliation Claim Because She Never
           Engaged in Protected Activity and Did Not Suffer Any Adverse Action. ............ 15

       F.   Plaintiff Cannot Succeed on Her Breach of Contract or Interference Claims
           Because She Does Not Have a Contract with the EHS. ...................................... 16

   II.   Plaintiff Will Not Suffer Irreparable Injury, or any Injury Whatsoever, Where
       PT-1 Transportation Services are Available to Her. ........................................................ 17

   III.   The Balance of Equities and Public Interest Weigh Against Plaintiff. ........................... 18

CONCLUSION.................................................................................................................... 18

Defendants Executive Office of Health and Human Services and Kate Walsh, in her official capacity,[1] oppose Plaintiff Kelechi Linardon's ("Plaintiff" or "Linardon") Motion for Preliminary Injunction (hereinafter, the "Motion").

## **INTRODUCTION**

Plaintiff, who rides a motorized scooter, has a Prescription for Transportation ("PT-1") approved by MassHealth. PT-1 status, which is available to many MassHealth members for a variety of reasons, gives Plaintiff access to transportation services, which EHS provides via contract with the Montachusett Regional Transit Authority ("MART") and its subcontractors. However, Plaintiff insists on receiving special privileges and amenities during transport that are not available to PT-1 consumers as a general matter, and that are not built into the EHS-MART Contract. PT-1 services include wheelchair vans capable of safely securing and transporting Plaintiff without disassembling her motorized scooter. Plaintiff refuses this option, instead demanding that vendors disassemble her scooter and physically lift it into non-standard vehicles. Plaintiff has been repeatedly told that she can use the transportation services available to all PT-1 consumers, but that her personalized demands cannot be met. Undeterred, she initiated this lawsuit and now seeks a preliminary injunction.

The Court should deny Linardon's request for a preliminary injunction. First, Plaintiff cannot succeed on any of her claims. Some are barred as a matter of law, others fail as a matter of fact. Second, Plaintiff will not suffer irreparable injury if the injunction does not issue. Indeed, she has not suffered any harm whatsoever because she can use PT-1 transportation services at any

---

[1]      Plaintiff names Kate Walsh, Secretary of Health and Human Services, as a defendant in her official and individual capacities. An official capacity suit, in all respects but name, is a lawsuit against the entity itself, in this case EHS. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiff has not filed a return of service for Secretary Walsh individually, and it appears that the Secretary was never served. Throughout this Opposition, EHS notes that Plaintiff's claims against the Secretary individually are meritless and have no likelihood of success. This is without waiving any of the Secretary's claims or defenses, including as related to improper or insufficient service.

time. Lastly, the balance of equities and public interest weigh against issuing the injunction. Thousands of MassHealth members take advantage of PT-1 transportation services every day, and there is no reason Plaintiff should be given special treatment not offered in the ordinary course.

## BACKGROUND

### I. Factual Background.

#### A. MassHealth Transportation Services and the EHS-MART Contract

MassHealth provides non-emergency transportation to medical appointments for qualified individuals that receive a PT-1 from their care provider.[2] [Declaration of Rebecca Badgley ¶ 6 (hereinafter, "Badgley Dec."), at Dkt. 22].[3] These services—scheduling individual rides on an as-needed basis—are referred to as "demand response" transportation. [Badgley Dec. ¶ 5]. EHS does not provide demand response transportation to PT-1 consumers directly. Id. Rather, EHS has a contract with MART, which in turn subcontracts many transportation vendors to provide the rides. Id. Under the EHS-MART Contract, subcontractors must satisfy an extensive set of qualification requirements, trainings, and ongoing performance standards. [Badgley Dec. ¶ 10]. The Human Service Transportation Office ("HST") within EHS oversees demand response transportation, including by ensuring that MART and its subcontractors operate within and satisfy the standards set in the contract. [Badgley Dec. ¶ 4]. MART's subcontracted vendors include livery companies that use standard vehicles, such as sedans and taxi cabs, as well as vendors that have "wheelchair vans," often referred to as "chair-car providers." [Badgley Dec. ¶ 9]. The wheelchair vans are

---

[2] See EHS Human Service Transportation Office, Get a ride to MassHealth medical appointments (May 6, 2025), https://www.mass.gov/info-details/get-a-ride-to-masshealth-medical-appointments.

[3] When considering a motion for a preliminary injunction, the Court "may accept as true well-pleaded allegations in the complaint and uncontroverted affidavits." Howe v. U.S. Bank Nat'l Ass'n, 440 F. Supp. 3d 99, 102 (D. Mass. 2020) (edits, quotation omitted). "The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction." Id. (citation omitted).

accessible vehicles that have a ramp or lift, can hold multiple wheelchairs at once, and have ambulatory seating for passengers. Id.

MassHealth PT-1 transportation is usually "curb-to-curb," meaning that each consumer is expected to get themselves to the vendor's vehicle once it arrives and to exit the vehicle for their appointments at their destination. [Badgley Dec. ¶ 8]. If needed, an individual can have an escort or a personal care attendant ("PCA") to assist them. Id. Nearly all PT-1 consumers that use a motorized scooter call a chair-car—they can move from their scooter to one of the ambulator seats, or stay in the scooter as it is fastened to the floor of the vehicle. [Badgley Dec. ¶ 12].

**B.  Plaintiff's Particular Demands for Services Beyond Standard PT-1 Transportation.**

Plaintiff rides a motorized scooter and is an approved PT-1 consumer.[4]  [Badgley Dec. ¶ 13]. She has utilized demand response transportation services from MART for over a decade. Id. Plaintiff consistently demands services that exceed the scope of PT-1 transportation and that cannot be met. [Badgley Dec. ¶ 15]. Plaintiff refuses to ride in a chair-car, insisting instead on riding in a large sedan or SUV—not a minivan—and to sit in the front seat of the vehicle; but few vendors have such large vehicles in their fleets, and some have policies prohibiting passengers from sitting next to the driver. [Badgley Dec. ¶¶ 15, 16, 18]. Plaintiff also refuses to share rides, demanding that she have the car to herself; but driver-vendors often conduct multiple pick-ups and drop-offs during a single trip. Id. And she demands that the driver-vendor assemble and disassemble her motorized scooter for her, which includes loading and unloading the heavy pieces

---

[4]     Plaintiff's statements in her Complaint and Motion that she uses a "power collapsible wheelchair" are untrue and misleading. [See Dkt. 1 at 4 ¶ f; Dkt. 5 at 2 ¶ 8]. She rides a motorized scooter, which can weigh a few hundred pounds, and which does not disassemble or fold as easily as a standard folding wheelchair, walker, or rollator. [See Badgley Dec. ¶ 14].

in and out of the vehicle; but this is physically strenuous, and there is nothing requiring any driver to perform these services.  Id.

Because of Linardon's individualized demands, which exceed the scope of the EHS-MART Contract and are not standard for PT-1 consumers, it has become nearly impossible to find any vendors who are willing to transport her.  [Badgley Dec. ¶ 19].  MART has nearly 300 subcontracted vendors, but only a handful will even consider providing services to Plaintiff and neither HST nor MART can require that they do so.  [Badgley Dec. ¶ 19, 20].  HST has not had many direct interactions with Linardon, because MART is the entity that directly manages her demand response transportation.  [Badgley Dec. ¶ 21].  However, both HST and MART have repeatedly told Plaintiff that her particular demands cannot be met but she can utilize standard curb-to-curb services offered to all approved PT-1 consumers, including bringing her own escort or PCA.  Id.  For example, on January 29, 2025, Jerry McDonald, Assistant Director of Member Services at MART, spent nearly two hours on the phone with Plaintiff discussing the situation, but she became belligerent, confrontational, and continued to demand special treatment.  [Badgley Dec. ¶ 22 and Ex. B thereto].

## II.     Procedural Posture.

On April 8, 2025, Plaintiff filed suit baselessly claiming that EHS, as well as MART and various named and unnamed individuals, caused her injury and discriminated against her on the basis of disability, race, and gender.  [Dkt. 1].  She then filed the present Motion for Preliminary Injunction on April 25, 2025.  [Dkt. 5].  The filings are nearly identical, and both are essentially bereft of substantive details or factual assertions other than a few references to a conversation with

Jerry McDonald on January 29, 2024.[5]  [See Dkt. 1 at 4 ¶¶ f–g; Dkt. 5 at 2 ¶ 8].  Instead, Plaintiff repeatedly claims without basis that defendants, including EHS, have acted tortiously towards her and committed "egregious" violations of federal law.[6]  Plaintiff's filings are also unclear as to all the causes of action she is pursuing.  To the best of EHS's understanding, Plaintiff brings the following causes of action: negligent and intentional infliction of emotional distress; breach of unspecified federal rights under 42 U.S.C. § 1983; violation of Title II of the Americans with Disabilities Act ("ADA"); violation of Title VI of the Civil Rights Act of 1964 ("Title VI"); retaliation in violation of the ADA and Title VI; breach of contract, and tortious interference with a contractual relationship.  On May 5, 2025, the Court set a remote hearing on Plaintiff's Motion for Preliminary Injunction for Monday, May 12, 2025.  [Dkt. 18].  EHS now opposes the Motion.

## ARGUMENT

Plaintiff's claims are meritless—many of the causes of action she asserts fail as matter of law, and any viable claim fails as a matter of fact.  The Court should deny Plaintiff's request for a preliminary injunction, which is "an extraordinary and drastic remedy that is never awarded as of right."  Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012) (quotation omitted); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) ("It frequently is observed that preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." (emphasis in original, quotation omitted)).  In order for the Court to grant Plaintiff's preliminary injunction, she

---

[5]     It is not clear whether this is an erroneous date, and Plaintiff meant to refer to the conversation that occurred on January 29, 2025, as referred to in Ex. B to the Badgley Declaration.

[6]     Plaintiff claims she is proceeding as a representative for a class of similarly situated persons because the "egregiousness of the behavior of the Defendants has Plaintiff under the belief that the Defendants have acted in the same way to many others similarly situated to her."  [Dkt. 1 at 1 ¶ 1; see also Dkt. 5 at 3 ¶ C].  It is well-established, however, that "as a pro se litigant, [Linardon] is not authorized to serve as the representative of a class."  Aldabe v. Cornell Univ., 296 F. Supp. 3d 367, 371 (D. Mass. 2017) (citing D. Mass. L.R. 83.5.5(b)).

"must establish [1] that [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that the injunction is in the public interest." Peoples Fed. Sav. Bank, 672 F.3d at 9 (quotation omitted). When the defendant is a government agency like EHS, the Court considers the balance of equities and the public interest jointly. Doe v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (citation omitted).

## I. Plaintiff Has No Likelihood of Success on the Merits of any of Her Claims.

Likelihood of success on the merits is the "sine qua non" of the preliminary injunction inquiry—"if the moving party cannot demonstrate that [s]he is likely to succeed in [her] quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (citation omitted); see also Peoples Fed. Sav. Bank, 672 F.3d at 9 (referring to likelihood of success as the "cynosure" of the inquiry). Here, Plaintiff cannot succeed on the merits of any of her claims.

### A. Plaintiff Cannot Succeed on the Merits of Her Tort Claims Because These Claims are Barred as a Matter of Law and Fail as a Matter of Fact.

In various parts of her Complaint and Motion, Linardon asserts that EHS negligently and intentionally caused her emotional distress. [Dkt. 1 at 7; Dkt. 5 at 3 ¶¶ 8–9]. Plaintiff cannot succeed on these tort claims because they are barred from proceeding in federal court under the Eleventh Amendment. Further, Plaintiff cannot succeed on her claim for intentional emotional distress because the Commonwealth retained its immunity to intentional torts under the Massachusetts Tort Claims Act ("MCTA"). Lastly, Plaintiff's claim for negligent emotional distress fails because Plaintiff cannot satisfy the elements of that claim against EHS.

1.  **Plaintiff's Tort Claims Against EHS are Barred by the Eleventh Amendment.**

The Constitution "specifically recognizes the States as sovereign entities." Alden v. Maine, 527 U.S. 706, 713 (1999) (quotation omitted). "Long interpreted as an affirmation of state sovereign immunity," the Eleventh Amendment "bar[s] a citizen from bringing a federal court action against his or her own State," Maysonet-Robles v. Cabrero, 323 F.3d 43, 48 (1st Cir. 2003), including state officials sued in their official capacities, see Mills v. State of Maine, 118 F.3d 37, 54 (1st Cir. 1997). Generally, the Eleventh Amendment generally guarantees that "non-consenting States may not be sued by private individuals in federal court."[7] Board of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

Plaintiff's tort claims are barred by the Eleventh Amendment because the Commonwealth has not waived its sovereign immunity for tort-based claims brought in federal court. Tort claims against state agencies must proceed under the MTCA, a "limited waiver" of the Commonwealth's sovereign immunity that permits tort actions to proceed only in Massachusetts Superior Court. See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) ("By enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."); Morrissey v. Massachusetts, No. 18-11386-MBB, 2022 WL 1463051, at *13 (D. Mass. May 9, 2022) ("The Massachusetts Supreme Judicial Court definitively holds that the MTCA 'grants exclusive jurisdiction over claims brought under the statute to the Commonwealth's Superior Courts.' . . . As a result, the First Circuit and courts in this district 'consistently [hold]

---

[7] The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

that claims brought under the [MTCA] in federal court ought [to] be dismissed.'" (edits in original) (quoting Wolski v. Gardner Police Dep't, 411 F. Supp. 3d 187, 193 (D. Mass. 2019)); see also M.G.L. c. 258 § 3 ("The superior court shall have jurisdiction of all civil actions brought against a public employer."). This Court cannot exercise jurisdiction over any of Linardon's tort claims against EHS. Her likelihood of success on the merits of these claims is therefore nonexistent.

### 2. Plaintiff's Claim for Intentional Infliction of Emotional Distress Cannot Proceed Against EHS Under the MTCA.

Linardon's claim for intentional infliction of emotional distress ("IIED") is barred by the MTCA because the Act "expressly exempts intentional torts from its provisions, and therefore a public employer [like EHS] cannot be sued for the intentionally tortious conduct of its employee." Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 626 (2012) (citing M.G.L. c. 258 § 10(c)). IIED is an intentional tort explicitly precluded by § 10(c) of the MTCA. See M.G.L. c. 258 § 10(c) (the limited waiver of sovereign immunity "shall not apply to . . . any claim arising out of an intentional tort, including . . . intentional mental distress"); see also Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 (1985) ("plaintiff's claims . . . [for] intentional infliction of emotional distress were properly dismissed because public employers are immune from such suits" under § 10(c)). Plaintiff therefore cannot succeed on any IIED claim against EHS.[8]

---

[8]    Without waiving service or foregoing any defense related to defective service, it is of note that while claims for IIED can proceed against an individual state employee like Secretary Walsh, that claim would fail here as a factual matter. To succeed on a claim of IIED, Linardon would have to meet an extremely high standard: "(1) that the actor intended to inflict emotional distress or that [she] knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (edits and quotation omitted). An IIED claim "cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Polay v. McMahon, 468 Mass. 379, 385 (2014) (quotations omitted). Linardon does not claim that Secretary Walsh did

[Footnote continues next page.]

**3. Plaintiff Cannot Succeed on Her Claim for Negligent Infliction of Emotional Distress Because She Cannot Satisfy the Elements of that Cause of Action.**

Even if Plaintiff could pursue a negligence claim against the Commonwealth in this Court, that claim would undoubtedly fail on its merits. "To state a claim for negligent infliction of emotional distress under Massachusetts law, a plaintiff must allege (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Brown v. JPMorgan Chase & Co., No. 22-11298-FDS, 2023 WL 3511363, at *3 (D. Mass. May 17, 2023) (quoting Payton v. Abbott Labs, 386 Mass. 540, 557 (1982)). To succeed on her negligent infliction of emotional distress ("NIED") claim, Plaintiff must show "objective symptoms caused by [the] alleged emotional distress." Ahern v. Sig Sauer, Inc., No. 21-cv-11007-DJC, 2021 WL 5811795, at *4 (D. Mass. Dec. 7, 2021) (citations omitted). This requires some showing of distress beyond "mere upset, dismay, humiliation, grief and anger." Vaiano v. Apple Inc., No. 24-11515-RGS, 2024 WL 3359435, at *2 (D. Mass. July 10, 2024) (quoting Sullivan v. Bos. Gas Co., 414 Mass. 129, 137 (1993)).

Here, Plaintiff will be unable to meet many of the elements of a NIED claim. While she vaguely alleges in her Complaint and Motion that EHS harassed, abused, and mocked her, there is nothing factual to back these claims. [See Dkt. 1 at 3 ¶ d]. Indeed, Plaintiff does not provide any details in any of her filings to support her claims that she suffered "emergency medical procedures and subsequent medical complications," let alone anything that would causally relate any such

---

anything that could reasonably be considered "extreme and outrageous" or "beyond all possible bounds of decency." Indeed, Plaintiff mentions the Secretary only a handful of times in the Complaint [see Dkt. 1 at 2 ¶ 4, 3 ¶ 11, 4 ¶ j], and does not refer to the Secretary at all in the Motion for Preliminary Injunction. The Secretary oversees the entire Department of Health and Human Services and has no direct role in approving or supervising non-emergency transportation for individual MassHealth members. There is no likelihood that Linardon would succeed on the merits of an IIED claim against the Secretary individually.

harms specifically to EHS.  The only factual statement from the Plaintiff in her filings concerns a conversation she had with Jerry McDonald, a MART employee, regarding her unreasonable demands during PT-1 transportation.  [Dkt. 1 at 4 ¶¶ f–g].  But as the Badgley Declaration and Exhibit B thereto show, EHS and MART have been exceedingly patient with Plaintiff in an attempt to resolve the situation.  During a call as recently as this past January, Mr. McDonald spent nearly two hours on the phone with Plaintiff trying to explain to her why her demands cannot be met, and it was Plaintiff who became aggressive and made repeated threats of legal action.  Plaintiff's self-inflicted harm—insisting on receiving special privileges beyond those offered by any of MART's transportation vendors, ones that virtually no vendor is willing to provide—cannot be considered an infliction of emotional distress by EHS.[9]

Where Plaintiff cannot succeed on the merits of any of her tort claims against EHS, the preliminary injunction should be denied.[10]

**B.     Plaintiff Cannot Succeed on the Merits of Any Claims Under 42 U.S.C. Section 1983, Because Such Claims are Barred as a Matter of Law.**

In her Complaint and Motion, Plaintiff makes various references to 42 U.S.C. § 1983, asserting that defendants acted unconstitutionally.  [See Dkt. 1 at 7–8; Dkt. 5 at 5].  These claims are convoluted and unspecific, but even had Plaintiff made some coherent § 1983 claim she would

---

[9]     Without waiving service or foregoing any defense related to defective service, to the extent Plaintiff seeks to assert any negligence claims against Secretary Walsh individually, those claims are plainly barred by the MTCA, because "public employees who commit negligent or wrongful acts or omissions 'while acting within the scope of [their] office or employment' are immune from liability."  See, e.g., Berry v. Com. Ins. Co., 488 Mass. 633, 637 (2021) (edits in original) (quoting G. L. c. 258, § 2).

[10]     To the extent that Plaintiff's tort claims seek to recover damages, they would fail for the additional reason that she never made presentment on EHS.  Before any civil action for damages can be brought against a public employer pursuant to the MTCA, it must first be "presented" in compliance with M.G.L. c. 258, § 4.  The presentment requirement is "strict," and acts as "statutory prerequisite for recovery" under the MTCA.  See, e.g., Shapiro v. City of Worcester, 464 Mass. 261, 267 (2013) (citation omitted).  Plaintiff does not allege that she made presentment.  While she is not required to make presentment for equitable relief, see Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15, 31 n.10 (2006), her failure to make presentment would foreclose any damages recovery for the alleged torts.

have no likelihood of success on the merits of such a claim for two reasons. First, the Commonwealth and its agencies have not waived, and Congress has not abrogated, the State's sovereign immunity under § 1983. See, e.g., Nakanwagi v. Exec. Off. of the Trial Ct., No. 23-10533-FDS, 2024 WL 38749, at *3 (D. Mass. Jan. 3, 2024) (citations omitted) ("The Eleventh Amendment bars claims brought under 42 U.S.C. §§ 1981, 1983, and 1985, as there has been no congressional abrogation of sovereign immunity as to those types of claims."); see also Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment."). Second, EHS is not a "person" within the meaning of § 1983, and is therefore not subject to suit pursuant to that provision. See, e.g., Nakanwagi, 2024 WL 38749, at *4 (citations omitted) ("It is well-settled, however, that neither a state nor its agencies or officials are 'persons' within the meaning of § 1983."). Any claim Plaintiff might attempt to pursue under § 1983 against EHS is barred as a matter of law, and the preliminary injunction should therefore be denied.[11]

### C. Plaintiff Cannot Succeed on the Merits of Her Claims Under Title II of the ADA Because She Was Never Discriminated Against, and Was Never Denied Transportation Services.

In her Complaint and Motion, Plaintiff repeatedly claims that defendants violated her federal rights under Title II of the ADA. [Dkt. 1 at 5–6; Dkt. 5 at 2 ¶ 9]. However, Plaintiff's likelihood of succeeding on the merits of this claim are slim at best, where the record shows that

---

[11] Without waiving service or foregoing any defense related to defective service, to the extent Plaintiff seeks to assert claims under 42 U.S.C. § 1983 against Secretary Walsh in her individual capacity, the likelihood of success on these claims is likewise essentially nonexistent. "To satisfy the 'constitutional injury' requirement, the plaintiff must make a showing of a deprivation of a federally-secured right." Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001). Plaintiff cannot successfully make this showing—she does not identify any constitutional rights that were infringed, and, as discussed supra, her claims that EHS or Secretary Walsh violated the ADA or Title VI are legally deficient and unsupported by the record. Further, even if there was some cognizable § 1983 claim here, Secretary Walsh would be entitled to qualified immunity, as it is unlikely that Plaintiff can meet her burden of showing that the defense is inapplicable. See Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018).

EHS never intentionally discriminated against Plaintiff. To the contrary, EHS attempted, alongside MART, to work with Plaintiff to come to resolution of the issue.

"Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019) (quoting 42 U.S.C. § 12101(b)(1)). Under Title II of the ADA, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To establish a violation of Title II, Plaintiffs must show that: (1) she is a qualified disabled person; (2) she was either "excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against;" and (3) the discrimination was based on the disabilities. Buchanan v. Maine, 469 F.3d 158, 170–71 (1st Cir. 2006) (citation omitted). However, "a plaintiff may not challenge the adequacy of services provided exclusively to the disabled under either the ADA or the Rehabilitation Act." Greene v. City of New York, 725 F. Supp. 3d 400, 424 (S.D.N.Y. 2024) (citing Doe v. Pfommer, 148 F.3d 73, 82 (2d. Cir. 1998)); see also Buchanan, 469 F.3d at 174 ("the ADA does not itself mandate the provision of services," and finding no violation of Title II because "the State is not obligated to provide new programs or services to the disabled which it has not previously provided to any group."); Kilroy v. Maine, No. 9-324-B-W, 2010 WL 145294, at *5 (D. Me. Jan. 8, 2010) ("In cases decided under Title II of the ADA, courts have held that the ADA does not 'establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate only that the services provided . . . to non-handicapped individuals not be denied to a disabled person because he is handicapped.'" (edits in original) (quoting Pfommer, 148 F.3d at 83)).

Here, Plaintiff cannot succeed on her Title II claim because she was never excluded from or denied transportation services by HST. To the contrary, the record shows that Plaintiff could, and still can, utilize the curb-to-curb services offered to any PT-1 consumer. Plaintiff's Complaint hides the ball, asserting that she is being denied adequate transportation services because of her disability. In reality, she is merely being denied specialized requests, which are not within the scope of the EHS-MART Contract and that no PT-1 consumer is entitled to receive. In other words, Plaintiff's Complaint asserts precisely the kind of claim that is not actionable under Title II: she challenges the "adequacy" of the transportation provided to her as a PT-1, Greene, 725 F. Supp. 3d at 424, and demands "services . . . not previously provided to any group." Kilroy, 2010 WL 145294, at *5. Plaintiff has no likelihood of succeeding on the merits of her Title II claim, and the preliminary injunction should be denied.[12, 13]

### D. Plaintiff Cannot Succeed on the Merits of Her Claims Under Title VI Because EHS Never Intentionally Discriminated Against Her.

Plaintiff asserts in her Complaint and Motion that defendants violated Title VI of the Civil Rights Act of 1964 "by unlawfully denying a request for a reasonable accommodation by a patient with a physical disability," [Dkt. 1 at 6 ¶ 22], including via "conditions imposed on Plaintiff that

---

[12]     Plaintiff's damages demand in her Complaint also cannot arise under a Title II claim because to recover compensatory damages she must prove the existence of intentional discrimination. Leclair v. Mass. Bay Transp. Auth., 300 F. Supp. 3d 318, 325 (D. Mass. 2018) (citing Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003)). "Many circuit courts have held that the applicable standard for proving intentional discrimination is one of deliberate indifference," but the First Circuit "appears to have adopted the more stringent standard of discriminatory animus." Id. at 325–26 (citations omitted). Plaintiff will be unable to recover damages under either standard. "Deliberate indifference" requires a showing of "knowledge that a harm to a federally protected right is substantially likely," Id. at 326, but Plaintiff's rights under the ADA are not harmed—she can access the PT-1 transportation services at any time. "Discriminatory animus" requires a showing "that defendant intended to discriminate against plaintiff based on [her] disability," Id., but the record shows the opposite: EHS and MART have continuously attempted to communicate with Plaintiff and explain that while her personalized preferences cannot be met, so she can utilize the services offered to all PT-1 consumers.

[13]     Without waiving service or foregoing any defense related to defective service, to the extent Plaintiff seeks to assert any claims under Title II of the ADA against Secretary Walsh in her individual capacity, those claims are barred as matter of law where "a claim may not be brought under the Title II of the ADA against an individual in his or her individual capacity." Wiesman v. Hill, 629 F. Supp. 2d 106, 111 (D. Mass. 2009).

effectively deny timely and safe transportation service." [Dkt. 5 at 4 ¶ D.2]. Plaintiff cannot succeed on this claim because there is nothing in the Complaint or Motion to suggest that EHS acted intentionally to discriminate against Plaintiff—indeed, the record demonstrates that EHS did not discriminate against Plaintiff at all.

Section 601 of Title VI "provides that no person shall, 'on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity' covered by Title VI."[14] <u>Alexander v. Sandoval</u>, 532 U.S. 275, 278 (2001) (quoting 42 U.S.C. § 2000d). There is no question that § 601 creates a private right of action, such that "private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." <u>Id.</u> at 279. However, it is likewise "beyond dispute" that "§ 601 prohibits only intentional discrimination." <u>Id.</u> "To make out a prima facie case of intentional discrimination" under Title VI, Plaintiff "must show that the defendant treated members of one race [or color or national origin] differently and less favorably than members of another race [or color or national origin] and that the defendant did so with a . . . discriminatory purpose." <u>Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.</u>, 980 F.3d 157, 195–96 (1st Cir. 2020) (citations omitted).

There is nothing in Plaintiff's Complaint or Motion to indicate that EHS treated Plaintiff differently than any other PT-1 consumer, let alone that EHS did so with discriminatory intent and purpose. Plaintiff has received the same treatment, and can utilize the same services, as any other PT-1 consumer, regardless of race, color, gender, nature of disability, language spoken, or any other protected category. Contrary to Plaintiff's baseless assertions, the record demonstrates that she

---

[14] For purposes of this Opposition only, EHS assumes, without conceding or waiving any of its claims or defenses, that Plaintiff could show that PT-1 transportation services, as administered by MassHealth, is a "program or activity covered by Title VI."

was never "excluded from participation in," "denied the benefits of," or was "subjected to discrimination under" the PT-1 transportation services program.

In short, Plaintiff's claims that EHS has discriminated against her in violation of Title VI are baseless, conclusory, and misleading. She has no likelihood of succeeding on the merits of this claim, and her request for a preliminary injunction should be denied.[15]

**E.     Plaintiff Cannot Succeed on Any Retaliation Claim Because She Never Engaged in Protected Activity and Did Not Suffer Any Adverse Action.**

Plaintiff claims in her Complaint and Motion, without basis or factual support, that defendants, and Jerry McDonald in particular, retaliated against her in violation of her rights under the ADA and Title VI. [See Dk. 1 at 6 ¶ 17; Dkt. 5 at D.1]. Plaintiff has no likelihood of succeeding on a retaliation claim under either statute. A retaliation claim under the ADA can be brought pursuant to Title V of the Act, which states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); see also Snell v. Neville, 998 F.3d 474, 486 n.16 (1st Cir. 2021). Similarly, "Title VI's discrimination prohibition has been held to include an implicit prohibition on retaliation based on opposition to practices that Title VI forbids." Louis D. Brandeis Ctr. for Hum. Rights Under L. v. President & Fellows of Harvard Coll., No. 24-11354-RGS, 2024 WL 4681802, at *6 (D. Mass. Nov. 5, 2024) (quotation omitted). To make a prima facie case of retaliation under either statute, Plaintiff would have to show three elements: (1) that she engaged in protected activity; (2) that EHS took a material adverse action

---

[15]     Without waiving service or foregoing any defense related to defective service, to the extent Plaintiff seeks to assert any claims under Title VI against Secretary Walsh in her individual capacity, those claims are barred as matter of law, where it is clear that "individuals cannot be held liable under Title VI." Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 230 (D. Mass. 2015) (quotation, citations omitted).

against her; and (3) that a causal connection exists between the protected activity and the adverse action.  See Snell, 998 F.3d at 487 (discussing standard for retaliation claims under Title V of the ADA); Louis D. Brandeis Ctr., 2024 WL 4681802, at *6 (discussing the same standard in the context of Title VI).

Plaintiff will be unable to succeed on any of these elements, regardless of the operative statute.  First, she has not engaged in any protected activity.  As discussed, she has not opposed any practice prohibited by the ADA or Title VI, and her demands for special treatment are not protected by law.  Second, EHS has not taken any adverse actions against Plaintiff.  She always had, and continues to have, full access to the same services available to any PT-1 consumer.  And third, seeing as there is no protected activity and no adverse action, there obviously cannot be a causal connection between them.  In short, Plaintiff's retaliation claims are meritless, and the Court should deny the preliminary injunction.[16]

## F.  Plaintiff Cannot Succeed on Her Breach of Contract or Interference Claims Because She Does Not Have a Contract with the EHS.

In her Complaint and Motion, Plaintiff vaguely claims that EHS breached a contract and tortiously interfered a contractual relationship.  [See Dkt. 1 at 6 ¶ 22; Dkt. 5 at 2 ¶ 8–9, 4 ¶ 3].  Plaintiff cannot succeed on any of these claims for the simple reason that she never had any contractual relationship with EHS, and there is nothing in the filings to suggest that EHS ever interfered with any contractual relationship relative to the Plaintiff.

---

[16]  When fully evaluated, retaliation claims under Title V of the ADA or Title VI of the Civil Rights Act of 1964 are assessed under a familiar burden-shifting framework applicable to Title VII or Title IX.  See Snell v. Neville, 998 F.3d 474, 487 (1st Cir. 2021); Cornelius-Millan v. Caribbean Univ., Inc., 261 F. Supp. 3d 143, 150 (D.P.R. 2016).  If Plaintiff could make a prima facie case of retaliation, the burden would shift to EHS to provide a legitimate, non-retaliatory reason for the adverse action.  The burden would then shift back to Plaintiff to show that EHS's reasons were pretextual.  However, seeing as Plaintiff has no likelihood of success on the first phase of this framework, there is no need to engage in full analysis of the burden-shifting framework.

"To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) (citing Singarella v. Boston, 342 Mass. 385, 387 (1961)).  Plaintiff has not alleged, and cannot show, that she entered into an agreement with EHS related to demand response transportation services.  Rather, the only relevant contract here is between EHS and MART, and that contract does not involve Plaintiff as party.  "To establish a claim of intentional interference with contractual relations, the plaintiff must prove that (1) the plaintiff had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 619 (2014) (citation omitted).  Again, Plaintiff has failed to allege, and will be unable to show, that she had a relevant contract with a third party for demand response transportation, let alone that EHS "knowingly induced" that third party to break that contract.

In short, Plaintiff's contract-related claims are meritless, and her Motion for Preliminary Injunction should be denied.

## II.     Plaintiff Will Not Suffer Irreparable Injury, or any Injury Whatsoever, Where PT-1 Transportation Services are Available to Her.

Even assuming arguendo that Plaintiff could show a likelihood of success on the merits of any of her claims, the preliminary injunction should be denied because she has not suffered any injury, and will not suffer irreparable injury going forward.  The harms alleged in the Complaint and Motion—that Plaintiff cannot use MassHealth transportation services to reach her appointments—are entirely self-imposed.  Contrary to Plaintiff's assertions, there is nothing

prohibiting her from utilizing curb-to-curb transportation under the same conditions available to all PT-1 consumers. EHS has never told Plaintiff anything to the contrary. Plaintiff has therefore suffered no injury, and will not suffer any injury in the future other than one of her own making.[17]

## III. The Balance of Equities and Public Interest Weigh Against Plaintiff.

EHS, via its contract with MART, provides curb-to-curb transportation services to thousands of individuals across the Commonwealth, conducting over 35,000 one-way rides each day and managing nearly 300 subcontracted vendors. This intricate system operates as smoothly as it does because the EHS-MART Contract is clear, and the subcontracted vendors understand and abide by set qualification and maintenance requirements. The Court should not carve out an exception for Plaintiff to receive individualized benefits, which are not available to other PT-1 members, merely because she believes she is entitled to preferential treatment. This particularly so where PT-1 transportation services remain available to her.

## CONCLUSION

Plaintiff has no likelihood of succeeding on the merits of any of her claims and will suffer no injury if the status quo persists. Further, the balance of the equities and public interest weigh against issuing a preliminary injunction here. EHS therefore respectfully request that this Honorable Court deny Plaintiff's Motion.

---

[17] To the extent Plaintiff seeks monetary relief, a preliminary injunction is not warranted where monetary loss can be remedied, and therefore is not irreparable harm. See, e.g., K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989) ("[I]f money damages will fully alleviate harm, then the harm cannot be said to be irreparable.").

Respectfully submitted,

DEFENDANTS,

EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES, and KATE WALSH in
Her Official Capacity,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

 /s/ Nadav S. Pearl
Nadav S. Pearl, BBO No. 707592
Assistant Attorney General
Government Bureau, Trial Division
One Ashburton Place
Boston, MA 02108
Nadav.Pearl@mass.gov | (617) 963-2881

Dated: May 8, 2025

## CERTIFICATE OF SERVICE

I, Nadav S. Pearl, Assistant Attorney General, hereby certify that on May 8, 2025, I filed
this document, and any exhibits and attachments thereto, via the CM/ECF system, so as to result
in service upon all participants registered as ECF users by transmission of a Notice of Electronic
Filing.

I further certify that I served a copy of this document, and any exhibits and attachments
thereto, on the Plaintiff via email and regular mail at:

Kelechi Linardon
kab4k@netscape.net
P.O. Box 52661
Boston, MA 02205

 /s/ Nadav S. Pearl
Nadav S. Pearl
Assistant Attorney General